**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER SCHIRO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CEMEX, S.A.B. de C.V., FERNANDO A. GONZÁLEZ OLIVIERI and JOSÉ ANTONIO GONZALEZ FLORES,<br><br>Defendants | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Christopher Schiro ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Cemex, S.A.B. de C.V. ("Cemex" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired securities of Cemex between August 14, 2014 and March 13, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal

securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2. Cemex S.A.B. de C.V. is a global building materials company that produces, distributes, and markets cement, ready-mix concrete, aggregates, and related building materials. Cemex operates throughout the Americas, Europe, Africa, the Middle East, and Asia.

3. Founded in 1906, the Company is headquartered in San Pedro Garza, Mexico, and its American depositary receipt ("ADR") trades on the New York Stock Exchange ("NYSE") under the ticker symbol "CX."

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Cemex executives had engaged in an unlawful bribery scheme in connection with the Company's business dealings in Colombia; (ii) discovery of the foregoing conduct would likely subject the Company to heightened regulatory scrutiny and potential criminal sanctions; (iii) the Company lacked adequate internal controls over financial reporting; and (iv) as a result, Cemex's public statements were materially false and misleading at all relevant times.

5. On September 23, 2016, post-market, Cemex disclosed the Company's dismissal of two senior executives after an internal probe found that payments worth $20 million relating to a land deal in Colombia had breached company protocols.

6. On this news, Cemex's American depositary receipt price fell $0.17, or 2.28%, to close at $7.26 on September 26, 2016.

7. On December 9, 2016, Cemex disclosed receipt of a subpoena from the SEC seeking information about irregular payments made at the Company's Colombia unit.

8. Then, on March 14, 2018, Cemex disclosed that the U.S. Department of Justice is investigating the Company over payments made by the Company related to a cement plant it is building in Colombia to determine whether any violations of federal bribery laws occurred.

9. On this news, Cemex's ADR price fell $0.12, or 1.64%, to close at $7.21 on March 14, 2018.

10. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

12. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

13. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Cemex's ADRs trade on the NYSE, located within this Judicial District.

14. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15. Plaintiff, as set forth in the accompanying Certification, purchased Cemex securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

16. Defendant Cemex is headquartered in Mexico, with the Company's principal executive offices located at Avenida Ricardo Margain Zozaya, 325, Colonia Valle del Campestre, San Pedro Garza Garcia, NL 66265 Mexico. Cemex's securities trade on the NYSE under the ticker symbol "CX."

17. Defendant Fernando A. González Olivieri ("Olivieri") has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Director.

18. Defendant José Antonio González Flores ("Flores") has served at all relevant times as the Company's Chief Financial Officer ("CFO") and Executive Vice President of Finance and Administration.

19. The Defendants referenced above in ¶¶ 17-18 are sometimes referred to- herein as the "Individual Defendants."

20. The Individual Defendants possessed the power and authority to control the contents of Cemex's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations

being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21. Cemex S.A.B. de C.V. is a global building materials company that produces, distributes, and markets cement, ready-mix concrete, aggregates, and related building materials. Cemex operates throughout the Americas, Europe, Africa, the Middle East, and Asia.

### Materially False and Misleading Statements Issued During the Class Period

22. The Class Period begins on August 14, 2014, when Cemex issued a press release entitled "Cemex Announces New CLH Cement Plant in Colombia," announcing the construction of a cement plant in Colombia. The press release stated in relevant part:

> **MONTERREY, MEXICO. AUGUST 14, 2014.** – CEMEX, S.A.B. de C.V. ("CEMEX") (NYSE: CX) announced today that its subsidiary, CEMEX Latam Holdings, S.A. ("CLH") (BVC: CLH), will begin the construction of a cement plant in Colombia. The total investment is expected to reach approximately US$340 million and to increase CLH's cement production capacity in Colombia from 4.5 million to close to 5.5 million tons per year.
>
> The first phase of this project includes the construction of a new grinding mill that is expected to start cement production during the second quarter of 2015. The rest of the plant will be completed during the second half of 2016. The plant will operate using modern and efficient technology to comply with high quality and environmental standards.
>
> This facility will be strategically located in the Antioquia department. This region has enjoyed high levels of economic growth and is expected to further benefit from the construction of infrastructure projects under the highway concession program in Colombia.

23. On April 27, 2015, Cemex filed an annual report on Form 20-F with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2014 (the "2014 20-F"). For fiscal year 2014, Cemex reported a net loss of

$510.06 million, or $0.04 per diluted share, on revenue of $15.79 billion, compared to a net loss of $849.24 million, or $0.06 per diluted share, on revenue of $15.33 billion for fiscal year 2013.

24. In the 2014 20-F, the Company stated in relevant part:

> **Item 16B—Code of Ethics**
>
> We have adopted a written code of ethics that applies to all employees, including our principal executive officer, principal financial officer and principal accounting officer, to ensure that all of our employees abide by the same high standards of conduct in their daily interactions.
>
> Our code of ethics provides the following main guidelines:
>
> ***
>
> (viii) ***Anti-bribery: we reject all forms of corruption; paying or receiving bribes is illegal and highly unethical, and can lead to severe consequences for all parties involved, including jail for individuals and harsh penalties to our company; we are committed to conducting our business with transparency and integrity, and try to ensure that all transactions comply with anti-bribery laws, including requirements to maintain complete and accurate books and records;***
>
> ***
>
> We ensure awareness and enforcement of our code of ethics through our ethics committees, training programs, and secured internal communications channels. We periodically evaluate and update the provisions of our code of ethics.
>
> You may view our code of ethics in the corporate governance section of our website (www.cemex.com)...

(Emphasis added.)

25. The Company's Code of Ethics and Business Conduct (latest version available on the Company's website) stated in relevant part:

> We reject all forms of corruption. Paying or receiving bribes is illegal and highly unethical, and can lead to severe consequences for all parties involved, including jail for individuals and harsh penalties for the Company. We are committed to conducting our business with transparency and integrity, and will therefore ensure that all transactions comply with anti-bribery laws, including requirements to maintain complete and accurate books and records.

26. The 2014 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the information contained in the

2014 20-F "fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report."

27. On April 22, 2016, Cemex filed an annual report on Form 20-F with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 20-F"). For fiscal year 2015, Cemex reported net income of $75.83 million, or $0.01 per diluted share, on revenue of $13.91 billion, compared to a net loss of $510.06 million, or $0.04 per diluted share, on revenue of $15.79 billion.

28. In the 2015 20-F, the Company stated in relevant part:

> **Item 16B—Code of Ethics**
>
> We have adopted a written code of ethics that applies to all employees, including our principal executive officer, principal financial officer and principal accounting officer, to ensure that all of our employees abide by the same high standards of conduct in their daily interactions.
>
> Our code of ethics provides the following main guidelines:
>
> ***
>
> ***(viii) Anti-bribery: we reject all forms of corruption; paying or receiving bribes is illegal and highly unethical, and can lead to severe consequences for all parties involved, including jail for individuals and harsh penalties to our company; we are committed to conducting our business with transparency and integrity, and try to ensure that all transactions comply with anti-bribery laws, including requirements to maintain complete and accurate books and records;***
>
> ***
>
> We ensure awareness and enforcement of our code of ethics through our ethics committees, training programs, and secured internal communications channels. We periodically evaluate and update the provisions of our code of ethics.
>
> You may view our code of ethics in the corporate governance section of our website (www.cemex.com)...

(Emphasis added.)

29. Cemex's Code of Ethics and Conduct contained the representations described *supra* at ¶25.

30. The 2015 20-F contained signed certifications pursuant to SOX by the Individual Defendants, stating that the information contained in the 2015 20-F "fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report."

31. The statements referenced in ¶¶ 22-30 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Cemex executives had engaged in an unlawful bribery scheme in connection with the Company's business dealings in Colombia; (ii) discovery of the foregoing conduct would likely subject the Company to heightened regulatory scrutiny and potential criminal sanctions; (iii) the Company lacked adequate internal controls over financial reporting; and (iv) as a result, Cemex's public statements were materially false and misleading at all relevant times.

**<u>The Truth Begins to Emerge</u>**

32. On September 23, 2016, post-market, Cemex issued a press release, filed on Form 6-K with the SEC, announcing the dismissal of two senior executives after an internal probe found that payments worth $20 million relating to a land deal in Colombia had breached company protocols. The press release stated in part:

> On September 23, 2016, CEMEX, S.A.B. de C.V. (NYSE: CX) ("CEMEX") informed the Mexican Stock Exchange (*Bolsa Mexicana de Valores*) that CEMEX's indirect subsidiary, CEMEX Latam Holdings, S.A. ("CEMEX Latam"), informed the Colombian Stock Exchange (*Bolsa de Valores de Colombia*) and Colombian Financial Superintendency (*Superintendencia Financiera de Colombia)* that with respect to the matter previously reported by CEMEX Latam regarding the new cement plant being built by CEMEX Colombia S.A. ("CEMEX Colombia") in the department of Antioquia in the municipality of Maceo, Colombia

> ("Maceo"), internal audits and investigations performed in accordance with the Corporate Governance policies and Code of Ethics of CEMEX Latam and CEMEX, have raised questions about the payment procedures related to the acquisition of the land and mining rights and benefits of the free tax zone in which the new cement plant is being built in Maceo. These payments did not adhere to CEMEX's and CEMEX Latam's established protocols.
>
> As officers responsible for the implementation and execution of the above referenced payments, two members of senior management of CEMEX Latam and CEMEX Colombia (the Vice President of Planning of CEMEX Latam and CEMEX Colombia and the General Counsel of CEMEX Latam Holdings and CEMEX Colombia), have been terminated effective immediately. In addition, the Chief Executive Officer of CEMEX Latam/Director of CEMEX Colombia has resigned, effective today. It is expected that in the following days, Mr. Jaime Muguiro Domínguez, the current President of CEMEX's operations in South, Central America and the Caribbean, and also current Chairman of the Board of Directors of CEMEX Latam who has worked at CEMEX for approximately 20 years, will assume the duties of Chief Executive Officer of CEMEX Latam and Director of CEMEX Colombia.
>
> CEMEX Colombia and CEMEX Latam have brought this matter to the attention of the Colombian Attorney General and presented to him the results of their audits and investigations concerning these payments, which were made to a non-governmental third party in the amount of approximately U.S.$20 million. CEMEX Latam and CEMEX Colombia have pledged to cooperate with the Colombian Attorney General, as required.
>
> As of today, CEMEX is not able to assess the likelihood that these investigations and the termination and departure of the above mentioned officers will lead to any actions that could impact CEMEX. If any legal or administrative actions are brought against CEMEX Latam and these are ultimately resolved against CEMEX Latam, these actions are currently not expected to have a material adverse impact on CEMEX's results of operations, liquidity and financial condition.

33. On this news, Cemex's ADR price fell $0.17, or 2.28%, to close at $7.26 on September 26, 2016.

34. On December 9, 2016, Cemex issued a press release, filed on Form 6-K with the SEC, disclosing receipt of a subpoena from the SEC seeking information about irregular payments made at the Company's Colombia unit. The press release stated in relevant part:

> On December 9, 2016, CEMEX, S.A.B. de C.V. (NYSE: CX) ("CEMEX") informed the Mexican Stock Exchange (Bolsa Mexicana de Valores) that it had received a subpoena from the United States Securities and Exchange Commission ("SEC") seeking information to determine whether there have

> been any violations of the U.S. Foreign Corrupt Practices Act ("FCPA"). This subpoena arises from the matter previously reported by CEMEX regarding the new cement plant being built by CEMEX Colombia S.A. ("CEMEX Colombia") in the department of Antioquia in the municipality of Maceo, Colombia (the "Maceo Project"). This subpoena does not mean that the SEC has concluded that CEMEX or any of its affiliates has broken the law.
>
> As previously disclosed, internal audits and investigations by CEMEX and CEMEX Latam Holdings, S.A. ("CEMEX Latam") had raised questions about payments relating to the Maceo Project. Those payments, totaling approximately U.S.$20.5 million, were made to a non-governmental third party in connection with the acquisition of the land, mining rights, and benefits of the tax free zone for the Maceo Project. These payments did not adhere to CEMEX's and CEMEX Latam's established protocols. As announced on September 23, 2016, the CEMEX Latam and CEMEX Colombia officers responsible for the implementation and execution of the above referenced payments were terminated and the then Chief Executive Officer of CEMEX Latam resigned.
>
> CEMEX Latam and CEMEX Colombia had already, in September 2016, brought the matter to the attention of the Colombian Attorney General, so that it could take any actions it deemed appropriate. As per the requirements of the audit committees of CEMEX and CEMEX Latam, CEMEX Colombia has also retained external counsel to assist CEMEX Latam and CEMEX Colombia in their collaboration with the Colombian Attorney General, which is still conducting its investigation. In accordance with CEMEX Latam's controls and customary procedures, an independent audit team reporting to external legal counsel in Colombia was engaged. CEMEX's external auditors are also reviewing CEMEX's internal audit documentation. CEMEX maintains an anti-bribery policy applicable to all of its employees and subsidiaries.
>
> CEMEX has been cooperating with the SEC and the Colombian Attorney General and intends to continue cooperating fully with the SEC and the Colombian Attorney General. It is possible that the United States Department of Justice or investigatory entities in other jurisdictions may also open investigations into this matter. To the extent they do so, CEMEX intends to cooperate fully with those inquiries, as well. At this point, CEMEX is unable to predict the duration, scope, or outcome of the SEC investigation or any other investigation that may arise; however, CEMEX does not expect this matter to have a material adverse impact on its consolidated results of operations, liquidity or financial position.

35. Then, on March 14, 2018, Cemex disclosed that the U.S. Department of Justice is investigating the Company over payments made by the Company related to a cement plant it is building in Colombia to determine whether any violations of federal bribery laws occurred.

36. On this news, Cemex's ADR price fell $0.12, or 1.64%, to close at $7.21 on March 14, 2018.

37. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Cemex securities traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Cemex securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Cemex or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Cemex;
- whether Defendants caused Cemex to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Cemex securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

44. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Cemex securities are traded in efficient markets;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NYSE, and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased and/or sold Cemex securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5**
**Against All Defendants**

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. This Count is asserted against Cemex and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49. During the Class Period, Cemex and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50. Cemex and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Cemex securities during the Class Period.

51. Cemex and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Cemex were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Cemex, their control over, and/or receipt and/or modification of Cemex allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Cemex, participated in the fraudulent scheme alleged herein.

52. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Cemex personnel to members of the investing public, including Plaintiff and the Class.

53. As a result of the foregoing, the market price of Cemex securities was artificially inflated during the Class Period. In ignorance of the falsity of Cemex's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Cemex securities during the Class Period in purchasing Cemex securities at prices that were artificially inflated as a result of Cemex's and the Individual Defendants' false and misleading statements.

54. Had Plaintiff and the other members of the Class been aware that the market price of Cemex securities had been artificially and falsely inflated by Cemex's and the Individual Defendants' misleading statements and by the material adverse information which Cemex's and the Individual Defendants did not disclose, they would not have purchased Cemex's securities at the artificially inflated prices that they did, or at all.

55. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

56. By reason of the foregoing, Cemex and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Cemex securities during the Class Period.

**COUNT II**

**Violation of Section 20(a) of The Exchange Act Against The Individual Defendants**

57. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. During the Class Period, the Individual Defendants participated in the operation and management of Cemex, and conducted and participated, directly and indirectly, in the conduct of Cemex's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

59. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Cemex's financial condition and results of operations, and to correct promptly any public statements issued by Cemex which had become materially false or misleading.

60. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Cemex disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Cemex to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Cemex within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Cemex securities.

61. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Cemex.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: March 16, 2018

Respectfully submitted,

**POMERANTZ, LLP**
*/s/Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600

New York, NY 10165
(212) 697-6484
Email: peretz@bgandg.com

***Attorneys for Plaintiff***