UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER SCHIRO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CEMEX, S.A.B. DE C.V., FERNANDO A. GONZÁLEZ OLIVIERI AND JOSÉ ANTONIO GONZALEZ FLORES,<br><br>Defendants. | No.: 1:18-cv-02352<br><br>MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF CARLOS LLANTADA AND RICHARD STORM, JR. FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS |

Movants Llantada and Storm[1] respectfully submit this memorandum of law: (i) in further support of their motion for appointment as Lead Plaintiff and approval of their selection of Pomerantz as Lead Counsel (Dkt. No. 20); and (ii) in opposition to the competing motions of Brian Gorman ("Gorman") (Dkt. No. 16) and Stationary Engineers Local 39 Pension Trust Fund ("Stationary Engineers Local") (Dkt. No. 18).

**PRELIMINARY STATEMENT**

This is a class action securities fraud lawsuit against Cemex and certain of the Company's officers. As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court should appoint as Lead Plaintiff the movant or movants with the greatest financial interest in the outcome of the action; and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

---

[1] All capitalized terms herein are defined in Llantada and Storm's moving brief, unless otherwise indicated. (*See* Dkt. No. 21.)

Here, those movants are Llantada and Storm, a small and cohesive partnership of two investors that suffered losses of approximately $621,311 in connection with its transactions in Cemex securities during the Class Period. *See*, *e.g.*, *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (finding the amount of the financial loss "the most significant" factor in determining financial interest). In addition, Llantada and Storm retained a total of 105,000 shares of Cemex stock at the end of the Class Period. *See Lax v. First Merchants Acceptance Corp.*, Case No. 97 C 2716, 1997 WL 461036, at *5 (N.D. Ill. 1997) (considering net shares purchased (*i.e.*, retained shares) alongside net loss in assessing financial interest).

Llantada and Storm also satisfy the adequacy and typicality requirements of Rule 23. Llantada and Storm, like all members of the Class, purchased Cemex securities at prices artificially inflated by defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations or omissions. These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class claims, satisfy the requirements of Rule 23. *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). As evinced by the group's Joint Declaration, submitted herewith, the group is small and cohesive, comprised of two like-minded investors who were aware of one another prior to the filing of the motion on their behalf, have participated in a conference call to discuss the litigation and the responsibilities of a class representative, are committed to maximizing the recovery on behalf of the class, and are prepared to work together to prosecute this action on behalf of the class. (*See* Joint Declaration in Support of Motion of Carlos Antonio Llantada Estrada and Richard Storm, Jr. for Appointment as Lead Plaintiffs and Approval of Selection of Counsel ("Joint Declaration"), annexed hereto as Exhibit A.)

For the reasons set forth herein, Llantada and Storm respectfully submit that their motion should be granted in its entirety.

**ARGUMENT**

I.  **Llantada And Storm Should Be Appointed Lead Plaintiffs**

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (finding that at this stage the Rule 23 inquiry "need not be extensive."). Once this presumption is triggered, it can only be rebutted upon ***"proof"*** that the presumptive Lead Plaintiff will not fairly represent the interests of the Class—whether another movant might somehow better protect the interests of the Class is irrelevant. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) (emphasis added). Here, the most adequate class representatives are Llantada and Storm.

A.  **Llantada And Storm Have The Largest Financial Interest In The Relief Sought By The Class**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest", courts around the country recognize that the amount of financial loss is the most significant factor to be considered. *See*, *e.g.*, *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[W]e, as have other courts, shall place the most emphasis on the last of

the four factors, the approximate loss suffered by the movant"); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 421, 511 (E.D. Pa. 2005) (finding the amount of the financial loss "the most significant" factor); *In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("most courts simply determine which potential lead plaintiff has suffered the greatest total losses.").

Second to the amount of the amount of the financial loss, courts consider, *inter alia*, the number of net shares purchased during a class period. *See Lax*, 1997 WL 461036, at *5 (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (*i.e.*, retained shares); (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[2]

No movant who sought appointment as lead plaintiff in the Action has a larger financial interest in the litigation than Llantada and Storm. The following chart summarizes Llantada and Storm's substantial financial interest compared to that of the two competing movants:

---

[2] *See also In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998). *Accord Comverse Tech.,* No. 06-CV-1825, 2007 WL 680779, at *7-8 (collectively, the "*Lax-Olsten*" factors.).

| Movant(s) | Estimated Loss | Retained Shares |
|---|---|---|
| Carlos Llantada and Richard Storm | $621,311 | 105,000 |
| Stationary Engineers Local 39 Pension Trust Fund | FIFO: $189,104[3]<br>LIFO: $181,627 | 46,530 |
| Brian Gorman | $88,795 | 40,000 |

As shown above, Llantada and Storm suffered a loss of approximately ***$621,311*** in connection with their transactions in Cemex securities during the Class Period. In addition, Llantada and Storm retained ***105,000 shares*** of Cemex stock. Llantada alone suffered a greater loss than any competing movant ($531,815), while Storm alone retained more shares (90,000) than any competing movant. By comparison, Stationary Engineers Local, the movant with the next largest financial interest, has alleged a loss of less than $190,000—less than ***30%*** of the $621,311 loss that Llantada and Storm incurred, and retained only 46,530 shares. Indeed, Llantada and Storm suffered a greater loss and retained more shares of Cemex stock than ***both competing movants combined***. As such, under any relevant metric, Llantada and Storm have the largest financial interest of any stockholder in this litigation within the meaning of the PSLRA.

### B.     Llantada And Storm Are An Appropriate Group

Llantada and Storm are an appropriate group, and as such the Court should consider the Group's aggregate financial interest in this litigation in determining the most adequate plaintiff for the Class. *See, e.g.*, *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that

---

[3] In its moving brief and accompanying damages analysis, Stationary Engineers Local asserted that it incurred a loss of $206,711 in connection with its Class Period purchases of Cemex securities. (Dkt. Nos. 19, 19-1 at *12.) From a review of Stationary Engineers Local's motion papers, it appears that Stationary Engineers Local's damages analysis did not account for its holdings of Cemex securities prior to the beginning of the Class Period. Accordingly, Llantada and Storm respectfully submit that Stationary Engineers Local overstated its loss in connection with the alleged fraud at issue. As set forth in the chart above, Stationary Engineers Local in fact appears to have incurred a loss of approximately $189,104 calculated on a first-in, first-out ("FIFO") basis, and (ii) $181,627 calculated on a last-in, first-out ("LIFO") basis.

appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff); *Cendant*, 264 F.3d at 266 ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted).

Here, the group is a small, cohesive partnership of two investors, each of whom incurred significant losses in connection with their purchases of Cemex securities. (*See* Dkt. No. 22-2—22-3.)  Prior to the filing of their motion, Llantada and Storm were aware of one another and agreed to seek appointment as Lead Plaintiff jointly.  (Joint Declaration, ¶ 5.)  Llantada and Storm have participated in a conference call to discuss their strategy for prosecuting this case, their common goals in ensuring that the Class achieves the best possible result, and that this action is litigated as efficiently as possible, among other things.  (*Id.* at ¶ 7.)  As their Joint Declaration attests, Llantada and Storm are a partnership of "like-minded investors" who understand the responsibilities of a Lead Plaintiff and are prepared to work together to fulfill those responsibilities and "prosecute the action in a collaborative and likeminded manner." (*Id.* at ¶¶ 7-8.)  Courts routinely appoint investor groups as lead plaintiff under such circumstances. *See, e.g.*, *Hansen v. Ferrellgas Partners, L.P.*, No. 16-CV-7840 (RJS), 2017 WL 281742, at *4–5 (S.D.N.Y. Jan. 19, 2017) (appointing group whose declarations established the group members exchanged contact information, had meetings to discuss the litigation, and "exhibited an understanding of the responsibilities they would have as co-lead plaintiffs"); *West Palm Beach Police Pension Fund v. DFC Global Corp.,* No. 13-CV-6731, 2014 WL 1395059, at *3 (E.D. Pa.

Apr. 9, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

In the alternative, if the Court is not inclined to aggregate Llantada and Storm's losses, rejecting their applications *in toto* is not the appropriate remedy; rather, the Court should disaggregate their losses and consider each movant individually. *See*, *e.g.*, *Kukkadapu v. Embraer S.A.*, 16 Civ. 6277 (RMB), 2016 WL 6820734, at *3 (S.D.N.Y. Oct. 20, 2016) (appointing group member as the sole lead plaintiff for the class); *Rosian v. Magnum Hunter Res. Corp.*, 13 Civ. 2668 (KBF), 2013 WL 5526323, at *3 (S.D.N.Y. Oct. 7, 2013) ("disaggregat[ing] the group *sua sponte* and consider[ing] its members as individual contenders for lead plaintiff"); *Beckman v. Ener1, Inc.*, 11 Civ. 5794 (PAC), 2012 WL 512651, at *4 (S.D.N.Y. Feb. 15, 2012) (same); *In re CMED Sec. Litig.*, 11 Civ. 9297 (KBF), 2012 WL 1118302, at *2 (S.D.N.Y. Apr. 2, 2012) (same). As set forth in their Joint Declaration, if the Court's preference is to appoint a single investor as Lead Plaintiff, then Llantada and Storm each support the appointment of either of themselves individually as Lead Plaintiff. (Joint Declaration, ¶ 5.)

### C.   Llantada And Storm Satisfy The Requirements Of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Llantada and Storm also satisfy the typicality and adequacy requirements of Rule 23. To overcome the strong presumption entitling Llantada and Storm to appointment as Lead Plaintiff, the PSLRA requires **"*proof*"** that the presumptive Lead Plaintiff is inadequate. 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II) (emphasis added).  No such proof exists in this case and any arguments to the contrary should be flatly rejected.

Llantada and Storm have further demonstrated their adequacy by selecting Pomerantz—counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently—to serve as Lead Counsel for the Class.

* * * *

Because Llantada and Storm have the largest financial interest in the relief sought by the Class and otherwise satisfy Rule 23, they are the presumptive "most adequate plaintiffs" of the Class within the meaning of the PSLRA.

## II.    Llantada And Storm's Selection Of Counsel Should Be Approved

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) (the Lead Plaintiff "is primarily responsible for selecting lead counsel.").

Here, Llantada and Storm have selected Pomerantz as Lead Counsel for the Class.  As the firm's resume reflects, Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.  (*See* Dkt. No. 22-4.)  Thus, the Court may be assured that by approving the selection of counsel by Llantada and Storm, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Llantada and Storm respectfully request that the Court grant their motion in its entirety.

Dated:   May 22, 2018

                Respectfully submitted,

                **POMERANTZ LLP**

                */s/ Jeremy A. Lieberman*
                Jeremy A. Lieberman
                J. Alexander Hood II
                600 Third Avenue, 20th Floor
                New York, NY 10016
                Telephone: (212) 661-1100
                Facsimile: (212) 661-8665
                Email:  jalieberman@pomlaw.com
                        ahood@pomlaw.com

                **POMERANTZ LLP**
                Patrick V. Dahlstrom
                Ten South LaSalle Street, Suite 3505
                Chicago, Illinois 60603
                Telephone: (312) 377-1181
                Facsimile: (312) 377-1184
                Email:  pdahlstrom@pomlaw.com

                *Counsel for Movants and*
                *Proposed Lead Counsel for the Class*