**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER SCHIRO, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>       v.<br><br>CEMEX, S.A.B. de C.V., CEMEX LATAM HOLDINGS, S.A., FERNANDO A. GONZÁLEZ OLIVIERI and JOSÉ ANTONIO GONZALEZ FLORES,<br><br>                Defendants. | Case No.: 18-cv-02352-VEC |

**MEMORANDUM OF LAW IN SUPPORT OF CEMEX LATAM HOLDINGS, S.A.'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND.....................................................................................2

PROCEDURAL HISTORY........................................................................................4

LEGAL STANDARDS .............................................................................................5

ARGUMENT ...........................................................................................................6

I.      THERE IS NO PRIVATE RIGHT OF ACTION UNDER SECTION 20(b).....................6

II.     THE SECTION 20(b) CLAIM AGAINST CLH IS TIME-BARRED..............................8

III.    CLH IS NOT SUBJECT TO PERSONAL JURISDICTION............................................12

        A.      CLH Is Not Subject To General Jurisdiction In The United States.....................13

        B.      CLH Is Not Subject To Specific Jurisdiction In The United States ....................14

IV.     PLAINTIFFS HAVE NOT PLEADED A CLAIM UNDER SECTION 20(b)..................16

        A.      Plaintiffs Fail To Plead Control Of CEMEX By CLH ...........................................17

        B.      Plaintiffs Fail To Plead An "Unlawful Act" By CLH ...........................................19

        C.      Plaintiffs Fail To Plead Scienter .........................................................................20

CONCLUSION........................................................................................................24

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alexander v. Sandoval*,
   532 U.S. 275 (2001).................................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................5, 19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)................................................................................5, 17

*In re Banco Bradesco, S.A. Sec. Litig.*,
   277 F. Supp. 3d 600 (S.D.N.Y. 2018)............................................................17, 18

*Barrett v. PJT Partners Inc.*,
   No. 16-CV-2841 (VEC), 2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017).................5, 19, 21, 24

*Brown v. Lockheed Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016)....................................................................................13

*Campo v. Sears Holdings Corp.*,
   371 F. App'x 212 (2d Cir. 2010) ............................................................................21

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994)..................................................................................................6

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)................................................................................5, 19

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018)......................................................................................15

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
   875 F. Supp. 2d 359 (S.D.N.Y. 2012)......................................................................6

*Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*,
   No. 12 Civ. 5262 (JPO), 2014 WL 4473352 (S.D.N.Y. Sept. 11, 2014)...............14

*Cohen v. Citibank, N.A.*,
   954 F. Supp. 621 (S.D.N.Y. 1996).......................................................................6, 17

*Copperweld Corp. v. Indep. Tube Corp.*,
   467 U.S. 752 (1984)................................................................................................19

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).........................................................................................12, 13

*In re Enter. Mortg. Acceptance Co., LLC, Sec. Litig.*,
    391 F.3d 401 (2d Cir. 2004), *as amended* (Jan. 7, 2005)..........................................................11

*Fischer v. Forrest*,
    No. 14-civ-1304, 2017 WL 128705, at *11 (S.D.N.Y. Jan. 13, 2017) *report
    and recommendation adopted*, 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017) ................10, 12

*Fogel v. Wal-Mart de Mexico SAB de CV*,
    No. 13-civ-2282, 2017 WL 751155 (S.D.N.Y. Feb. 27, 2017) *aff'd sub nom.
    Fogel v. Vega*, 759 F. App'x 18 (2d Cir. 2018), and *aff'd sub nom. Fogel v.
    Vega*, 759 F. App'x 18 (2d Cir. 2018) ................................................................................8, 12

*Friedman v. Wheat First Secs. Inc.*,
    64 F. Supp. 2d 338 (S.D.N.Y. 1999)........................................................................................8

*Gibbons v. Malone*,
    703 F.3d 595 (2d Cir. 2013)......................................................................................................3

*Hahn v. Office & Prof'l Emps. Int'l Union, AFL-CIO*,
    107 F. Supp. 3d 379 (S.D.N.Y. 2015)....................................................................................10

*Janus Capital Grp. Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)...............................................................................................................6, 8

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998).........................................................................................12, 15, 19

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984).........................................................................................................12, 14

*Krupski v. Costa Crociere S.p.A.*,
    560 U.S. 538 (2010)................................................................................................................11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262 (NRB), 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015), *on
    reargument*, 2016 WL 1301175 (S.D.N.Y. Mar. 31, 2016) ...................................................14

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012)......................................................................................................15

*LT Int'l Ltd. v. Shuffle Master, Inc.*,
    No. 2:12-CV-1216-JAD-GWF, 2014 WL 3734270 (D. Nev. July 29, 2014) .........................19

*McCoy v. Goldberg*,
    883 F. Supp. 927 (S.D.N.Y. 1995)...........................................................................................8

*McLaughlin v. Campbell*,
    410 F. Supp. 1321 (D. Mass. 1976) ..........................................................................................6

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)............................................................................................................8

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010)..........................................................................................................20

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..............................................................................................5

*Ortega v. New York City Off-Track Betting Corp.*,
    No. 97 CIV. 7582 (KMW), 1999 WL 342353 (S.D.N.Y. May 27, 1999)...............................7

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010)..............................................................................................12

*Perkins v. Benguet Consol. Mining Co.*,
    342 U.S. 437 (1952)........................................................................................................13

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    233 F.R.D. 143 (D. Del. 2005) .........................................................................................19

*Rex & Roberta Ling Living Trust U/A Dec. 6, 1990 v. B Commc'ns Ltd.*,
    346 F. Supp. 3d 389 (S.D.N.Y. 2018)..........................................................................22, 23

*Rex & Roberta Ling Living Trust U/A Dec. 6, 1990 v. B Commc'ns Ltd.*,
    No. 17-CV-4937 (JPO), 2019 WL 1407453 (S.D.N.Y. Mar. 28, 2019).............................6, 16

*Robinson v. Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994)...........................................................................................12, 15

*In re Roman Catholic Diocese Inc.*,
    745 F.3d 30 (2d Cir. 2014)..............................................................................................14

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)............................................................................................20

*Rothschild Int'l Corp. v. Liggett Grp., Inc.*,
    6 Del. J. Corp. L. 421 (Del. Ch. 1981).............................................................................19

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    351 F. Supp. 2d 334 (D. Md. 2004) .................................................................................16

*Rush v. Savchuk*,
    444 U.S. 320 (1980)........................................................................................................12

*S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc.*,
    No. 10 Civ. 7547, 2013 WL 1234937 (S.D.N.Y. Mar. 26, 2013) ........................................10

*SEC v. Coffey*,
    493 F.2d 1304 (6th Cir. 1974) ...........................................................................17

*SEC v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996)..............................................................................17

*SEC v. Stringer*,
    No. Civ. 02-1341-ST, 2003 WL 23538011 (D. Or. Sept. 3, 2003) ........................7

*SEC v. Zavodchikov*,
    No. CV 16-845, 2019 WL 3451501 (D.N.J. July 31, 2019).................................17

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008) .............................................................................................6

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004) .................................................................................12

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008)...............................................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................................................20

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013)..........................................................................12, 15

*In re VEON Ltd. Sec. Litig.*,
    No. 15-CV-08672 (ALC), 2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017)............23

*In re Vitamin C Antitrust Litig.*,
    995 F. Supp. 2d 125 (E.D.N.Y. 2014) .................................................................12

*Walden v. Fiore*,
    571 U.S. 277 (2014)................................................................................12, 14, 16

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d. Cir. 2016)..................................................................14, 15, 16

*In re World Wrestling Entm't, Inc. Sec. Litig.*,
    180 F. Supp. 3d 157 (D. Conn. 2016)....................................................................6

*Youngers v. Virtus Inv. Partners Inc.*,
    195 F. Supp. 3d 499 (S.D.N.Y. 2016)..................................................................18

**Statutes**

15 U.S.C. § 77k.....................................................................................................7

15 U.S.C. § 77l ........................................................................................................7

15 U.S.C. § 77o(a) ...................................................................................................7

15 U.S.C. § 78i ........................................................................................................7

15 U.S.C. § 78r ........................................................................................................7

15 U.S.C. § 78t-1 .....................................................................................................7

15 U.S.C. § 78t(a) ....................................................................................................7

15 U.S.C. § 78t(b) ........................................................................................6, 16, 19

15 U.S.C. § 78u-4(b)(1) ...........................................................................................5

15 U.S.C. § 78u-4(b)(1)-(2) ...................................................................................20

15 U.S.C. § 78u-4(b)(2)(A) ......................................................................................5

28 U.S.C. § 1658(b) .................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 9(b) ..................................................................................................5

Fed. R. Civ. P. 15(c)(1)(C)(ii) ...............................................................................10

Defendant CEMEX LatAm Holdings, S.A. ("CLH") respectfully submits this memorandum of law in support of its motion to dismiss the Second Amended Class Action Complaint for Violation of the Federal Securities Laws (Dkt. No. 60) (the "SAC") for failure to state a claim and lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2). CLH also joins in the arguments for dismissal set forth in the motion to dismiss of CEMEX, S.A.B. de C.V. ("CEMEX") and the Individual Defendants to the extent those arguments are applicable to CLH.

## PRELIMINARY STATEMENT

In granting the defendants' motion to dismiss the Amended Complaint in this case, this Court noted that it was "skeptical that the flaws in the Amended Complaint can be remedied." Order (Dkt. No. 59) at 29. Lacking any means of filling the holes in its claims for securities fraud against the existing defendants, Plaintiffs instead added a new defendant they had previously elected not to sue: CLH, a partially owned, foreign indirect subsidiary of defendant CEMEX, the Mexican building materials company. But Plaintiffs had good reason not to sue CLH initially. To pursue CLH, which did not make the allegedly misleading statements that are the subject of this lawsuit and has no connection to the United States sufficient to support personal jurisdiction, Plaintiffs are relying entirely on an obscure provision of the Securities Exchange Act of 1934 (the "Exchange Act")—Section 20(b)—that has never before been found to create a private right of action. In any event, Plaintiffs' claim is plainly untimely and inadequately pleaded.

The Court has an abundance of reasons to dismiss the claim against CLH.

*First*, in the 85 years since the Exchange Act was enacted, apparently no court—even in past eras when courts had more latitude to recognize private rights of action than they do now—has *ever* found a private right of action under Section 20(b).

*Second*, Plaintiffs' claim is time-barred on its face because it was brought in August 2019, more than two years after the alleged wrongdoing at issue here was disclosed.  And Plaintiffs have no basis to argue the claim "relates back" to the filing of a previous complaint because their prior complaints make clear that Plaintiffs did not make a "mistake of identity" as to CLH, as required even to consider relation back, and indeed the SAC itself does not allege mistaken identity.

*Third*, the Court cannot exercise personal jurisdiction over CLH, a Spanish corporation that Plaintiffs describe as having principal operations in South America and Central America.  CLH is not subject to general jurisdiction because it is not "at home" in the United States, and Plaintiffs do not contend otherwise.  Nor is CLH subject to specific jurisdiction, because it did not engage in any suit-related conduct in, or intentionally aimed at, the United States.

*Fourth*, and finally, Plaintiffs fail to plead facts to support three essential elements of a Section 20(b) claim:  (i) actual control by CLH over the party making the allegedly misleading statements (here, its majority owner, CEMEX); (ii) an unlawful act by CLH in violation of the Exchange Act; and (iii) scienter on the part of CLH.

Each of these grounds independently supports dismissal, and the Court should dismiss the claim against CLH with prejudice.

## FACTUAL BACKGROUND

Lead Plaintiffs Carlos Llantada, Jr., Richard Storm, and Stationary Engineers Local 39 Pension Trust Fund ("Plaintiffs"), purportedly on behalf of a class of purchasers of American Depositary Shares of CEMEX on the New York Stock Exchange, allege that CEMEX, CEMEX's CEO and CEMEX's CFO (Fernando A. González Olivieri and José Antonio González Flores, respectively—together, the "Individual Defendants"), in violation of Section 10(b) of the Exchange Act, made materially false or misleading statements (or omissions) relating to improper

payments allegedly paid by employees of CLH and its subsidiary, CEMEX Colombia.[1]   The alleged payments, in the approximate amount of $20.5 million, were purportedly paid to a legal representative of the company from which CEMEX Colombia acquired land, and associated mining rights and tax benefits, for a cement plant in Maceo, Colombia.  SAC ¶¶ 1, 54–58.

Plaintiffs claim that, while CEMEX publicized the construction of the Maceo plant and disclosed certain unrelated legal proceedings relating to the acquisition in various SEC filings and other public statements in 2015 and early 2016, it improperly failed to disclose the alleged payments to the seller's legal representative and the potential legal and regulatory risks arising from them.  SAC ¶¶ 4–7, 39–53.  Plaintiffs claim they were damaged when the price of CEMEX's ADSs dropped, allegedly, in response to disclosures about the alleged payments and resulting government investigations.  SAC ¶¶ 8–12, 54–60.

CLH is an indirect and partial subsidiary of CEMEX, which owned approximately 74 percent of CLH, a controlling percentage, as of December 31, 2016.  SAC ¶¶ 27, 54.  CLH, which is incorporated in Spain, is the holding company for CEMEX's operations in various Latin American countries and owns approximately 99.7 percent of its subsidiary, CEMEX Colombia. *Id.* ¶¶ 3, 25–26.  CEMEX operates throughout the Americas, Europe, Africa, the Middle East and Asia, and CLH accounts for only 13 percent of CEMEX's net sales.  *Id.* ¶¶ 2–3.  CLH's common shares are listed on the Colombian Stock Exchange.  *Id.* ¶ 20.  CLH has no shares listed or traded in the United States, has no ADR or ADS program in the United States and makes no securities filings in the United States.  Plaintiffs do not allege that they were investors in CLH.

---

[1]  This summary is taken from the factual allegations of the SAC, which are accepted as true solely for purposes of this motion to dismiss.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).  Because the Court is already familiar with the case, we do not provide a detailed recitation of the facts.

Pursuant to a "Framework Agreement" between the companies, CLH is obligated to give CEMEX access to its books and internal controls and to provide CEMEX regularly with various financial results and other information, certifications and reports.  CEMEX, not CLH, files Forms 6-K with the SEC announcing the issuance of CLH's quarterly reports, as well as Forms 6-K attaching CLH's financial results.  SAC ¶¶ 28–29.

Plaintiffs allege that CLH, in violation of Section 20(b) of the Exchange Act, "used its relationship with CEMEX to cause the Company to issue materially false and misleading information in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder."  They also allege that CLH "was a control person over CEMEX for purposes of issuing statements pertaining to [CLH] in filings with the SEC."  Plaintiffs further claim that CLH "engaged in conduct that was unlawful for [CLH] to do under Section 10(b) of the Exchange Act and the rules and regulations promulgated thereunder through another person, CEMEX."  SAC ¶ 88.

## PROCEDURAL HISTORY

The first complaint in this action was filed on March 16, 2018, against CEMEX and the Individual Defendants.  Dkt. No. 1.  On August 2, 2018, Plaintiffs filed an Amended Complaint that again named CEMEX and the Individual Defendants as the only defendants.  Dkt. No. 39.  On July 12, 2019, the Court granted the motions to dismiss filed by those defendants and, while warning that it was "skeptical that the flaws in [the complaint] can be remedied," gave Plaintiffs leave to amend.  Dkt. No. 59 (the "Order") at 29.  Plaintiffs then filed the SAC, the third complaint, which named CLH as a defendant for the first time, on August 1, 2019.  Dkt. No. 60.

4

## LEGAL STANDARDS

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is satisfied only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Id.* While the Court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor, it need not accept as true conclusory allegations or legal conclusions pleaded as fact. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002); *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555); *Barrett v. PJT Partners Inc.*, No. 16-CV-2841 (VEC), 2017 WL 3995606, at *3 (S.D.N.Y. Sept. 8, 2017).

Under Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a plaintiff alleging federal securities fraud under the Exchange Act must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). The PSLRA also requires that "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Finally, where fraudulent intent, or "scienter," is a required element, the plaintiff must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

5

**ARGUMENT**

**I.     THERE IS NO PRIVATE RIGHT OF ACTION UNDER SECTION 20(b)**

Section 20(b) provides that:

It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person.

15 U.S.C. § 78t(b).  To CLH's knowledge, no court has ever found a private right of action under this section of the statute.[2]  At least one court has expressly held that there is no private right of action.  *See McLaughlin v. Campbell*, 410 F. Supp. 1321, 1325 (D. Mass. 1976) (refusing to imply private right of action under Section 20(b) and noting lack of legislative history or statutory language supporting a private action).  This Court should not be the first in the country, in the 85 years since the statute was adopted, to hold that there is one.  As the Supreme Court has said, "the Judiciary's recognition of an implied private right of action necessarily extends its authority to embrace a dispute Congress has not assigned it to resolve. . . .  The decision to extend the cause of action is for Congress, not for us."  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 164–66 (2008) (refusing to create a private cause of action for aiding and abetting under Section 20(e)).[3]

---

[2] Courts in this District, when presented with claims under Section 20(b), have declined to find a private cause of action, or at least have declined to reach the issue.  *See Rex & Roberta Ling Living Trust U/A Dec. 6, 1990 v. B Commc'ns Ltd.*, No. 17-CV-4937 (JPO), 2019 WL 1407453, at *11 (S.D.N.Y. Mar. 28, 2019); *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 375 n.4 (S.D.N.Y. 2012).  *See also Cohen v. Citibank, N.A.*, 954 F. Supp. 621, 630 (S.D.N.Y. 1996) ("Few reported cases discuss the applicability of Section 20(b)"); *In re World Wrestling Entm't, Inc. Sec. Litig.*, 180 F. Supp. 3d 157, 189 (D. Conn. 2016).

[3] Furthermore, implying a private right of action under Section 20(b) would arguably create a private right of action against any person who indirectly violates any provision of the Exchange Act, which would undermine the holdings of both *Janus Capital Group Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) and *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) and eviscerate much of the language of the Exchange Act.

6

A plain reading of the statute confirms that Section 20(b) does not provide for a private right of action.  It prohibits certain conduct by "any person, directly or indirectly."  Statutes like this one "that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (internal citations omitted).  In such circumstances, the Supreme Court has said, without an indication of statutory "intent to create not just a private right but also a private remedy . . . a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

Where Congress intends to create a private right of action, it uses language reflecting its intent, such as "shall be liable" or "liability" (*see* 15 U.S.C. §§ 77k, 77l, 77o(a), 78i, 78r, 78t-1), or lists the persons subject to suit and the parties who can sue them. *Id*. § 78p(b).  By contrast, Section 20(b) focuses on the person regulated and thus "is specifically geared toward government enforcement actions." *SEC v. Stringer*, No. Civ. 02-1341-ST, 2003 WL 23538011, at *6 (D. Or. Sept. 3, 2003).  Whereas neighboring Section 20(a), for example, explicitly provides for the liability of control persons, 15 U.S.C. § 78t(a) (control persons "shall also be liable jointly and severally" with the controlled person "to any person to whom such controlled person is liable"), Section 20(b) has no such language.

Plaintiffs assert a claim against CLH only under Section 20(b).  Their literal failure to plead a cause of action is by itself sufficient to compel dismissal of the Complaint against CLH.[4]

---

[4] Although the bold text above Count I of the SAC literally says "Against All Defendants," this wording is unchanged from the prior Amended Complaint, which did not name CLH as a defendant, and appears to be in error.  The body of Count I confirms this, stating that "[t]his Count is asserted against Cemex and the Individual Defendants" (SAC ¶ 73) and repeatedly refers only to "Cemex and the Individual Defendants." *Id*. ¶¶ 74–79, 81.  In addition, the Complaint itself contains no factual allegations, in Count I or otherwise, accusing CLH of violating Section 10(b). *See, e.g., Ortega v. New York City Off-Track Betting Corp.*, No. 97 CIV. 7582 (KMW), 1999 WL 342353, at *7 n.4 (S.D.N.Y. May 27, 1999) (construing count to be brought under Fifth Amendment where the "heading of this count implicates the First Amendment and the body of the count references the Fifth Amendment" and "[g]iven the overall

7

## II.      THE SECTION 20(b) CLAIM AGAINST CLH IS TIME-BARRED

Section 20 does not have an independent statute of limitations.   Because it creates derivative liability for violations of other sections of the Exchange Act, claims under Section 20 are governed by the limitations periods for those other sections.   *See Friedman v. Wheat First Secs. Inc.*, 64 F. Supp. 2d 338, 342 (S.D.N.Y. 1999) (citing *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 349 (2d Cir. 1993)).   The Exchange Act claims for which CLH is alleged to be derivatively liable must be brought within "2 years after the discovery of the facts constituting the violation . . . ."   28 U.S.C. § 1658(b).

Pursuant to the discovery rule, "the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered the facts constituting the violation." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (internal quotation marks omitted) (applying discovery rule to Exchange Act claims).   The Section 20(b) claim asserted against CLH is untimely because CEMEX's September 23, 2016 press release and SEC filing—which Plaintiffs allege in the SAC "announc[ed] that an internal probe had uncovered that two senior executives had improperly paid $20 million in bribes in connection with the acquisition of land, mining rights and benefits of the tax-free area where it was building a new cement plant in Maceo"—would have led a reasonably diligent plaintiff to have discovered the facts underlying its claim.   *See, e.g., Fogel v. Wal-Mart de Mexico SAB de CV*, No. 13-civ-2282, 2017 WL 751155,

---

tenor of this count"); *McCoy v. Goldberg*, 883 F. Supp. 927, 931 n.1 (S.D.N.Y. 1995) (interpreting complaint to allege only contribution claim where body of complaint only alleged contribution even though heading of counts listed both contribution and indemnification).   There is no good faith basis in fact or law for Plaintiffs to contend that a Section 10(b) claim is asserted against CLH but, for the avoidance of doubt, any such claim would be subject to dismissal because it is time-barred and this Court lacks personal jurisdiction over CLH (as explained *infra*) and for the reasons set forth in CEMEX's motion to dismiss.   In addition, Plaintiffs do not allege that CLH is the maker of any alleged misstatement or omission in CEMEX's disclosures or had "ultimate authority" over the making of any such alleged misstatement or omission sufficient to permit a Section 10(b) claim under *Janus Capital Group Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011), and other, additional grounds for dismissal would apply.

at *9 (S.D.N.Y. Feb. 27, 2017) *aff'd sub nom. Fogel v. Vega*, 759 F. App'x 18 (2d Cir. 2018), and

*aff'd sub nom. Fogel v. Vega*, 759 F. App'x 18 (2d Cir. 2018) (securities fraud claims untimely

where they were brought more than two years after New York Times article revealed bribery

scheme and internal investigation to public).  The SAC was filed on August 1, 2019, well more

than two years after that September 23, 2016 press release and SEC filing.  *See* SAC, Dkt. No. 60.

Even if the September 23, 2016 press release were viewed as not providing sufficient

information to allow a reasonably diligent plaintiff to discover the facts underlying its claim,

Plaintiffs allege several additional disclosures—all made more than two years prior to the August

1, 2019 filing of the SAC—that undoubtedly together provided sufficient information to trigger

the two-year statute of limitations.  In particular, Plaintiffs allege:

> The Company then admitted on April 28, 2017, when it filed its annual report on
> Form 20-F, that its "internal control over financial reporting was not effective."
> CEMEX made clear that this "material weakness" in internal controls "relates, in
> part, to the previously disclosed irregular payments to a non-governmental
> individual made in connection with the construction by CEMEX Colombia of a
> new integrated cement plant in the Antioquia department near the municipality of
> Maceo, Colombia (the 'Maceo Project')."

SAC ¶ 58.  Plaintiffs further quote the April 28, 2017 Form 20-F disclosure as follows:

> As of December 31, 2016, the investigations of this failure, and the implementation
> of our remediation plan to address it, were not far enough advanced to provide a
> sufficient level of assurance that such *circumvention or override of controls and
> misuse of funds by management* would be prevented.

*Id.* (emphasis added).  This disclosure in particular provided Plaintiffs with enough information to

trigger the statute of limitations.  *See also id.* ¶¶ 56–57.

Nor can the relation-back doctrine revive the time-barred claim here.  CLH was not

previously named as a defendant in this action.  Where, as here, "the amendment changes the party

or the naming of the party against whom a claim is asserted," an amended pleading "relates back

to the date of the original pleading" only where, among other things, "the party to be brought in

by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii).  *See S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc.*, No. 10 Civ. 7547, 2013 WL 1234937, at *5 (S.D.N.Y. Mar. 26, 2013).  A "mistake concerning the proper party's identity" as required by Rule 15(c)(1)(C)(ii) means that the added party will have seen the failure to join it as an error, rather than a deliberate strategy.  *See, e.g., Fischer v. Forrest*, No. 14-civ-1304, 2017 WL 128705, at *11 (S.D.N.Y. Jan. 13, 2017) (Rule 15(c)(1)(C) did not allow relation back where plaintiff's "decision not to sue Brushy Mountain until the Third Amended Complaint reflected his strategy . . . and not a mistake as to the correct defendant."), *report and recommendation adopted*, 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017); *Hahn v. Office & Prof'l Emps. Int'l Union, AFL-CIO*, 107 F. Supp. 3d 379, 385 (S.D.N.Y. 2015) (no relation back under Rule 15(c)(1)(C) because "[r]ather than suing the wrong party, . . . '[t]he plaintiff has sued [what he believes is] the right defendant, and simply neglected to sue another defendant who might also be liable.'" (emphasis in original) (quoting *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014))).

Here, there can be no dispute that Plaintiffs' failure to join CLH as a party in the prior pleading, the Amended Complaint, was not a case of mistake concerning CLH's identity.  The Amended Complaint alleged in paragraph 3, for example:

> Per CEMEX's SEC filings, one of its subsidiaries, CLH Holdings, S.A. ("Cemex Latam") is the holding company for CEMEX's "most significant operations" in Brazil, Colombia, Costa Rica, Guatemala, Nicaragua, Panama and El Salvador. Through CLH, CEMEX owns approximately 99.7% of CEMEX Colombia S.A. ("CEMEX Colombia"), its main subsidiary in Colombia and the second largest cement producer in Colombia.

Am. Compl. (Dkt. No. 39), ¶ 3.[5]

---

[5]  *See also id*. ¶ 4 ("During the Class Period, Defendants touted the construction of a new cement plant in Maceo, Colombia which they expected to 'increase [Cemex Latam's] cement production capacity in Colombia from 4.5

Thus, Plaintiffs knew exactly what CLH was and its role in the purported wrongdoing alleged in the Amended Complaint. *Cf. Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 552 (2010) (noting that relation back improper where "the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity"). Plaintiffs' failure to include CLH as a defendant in the Amended Complaint (which was filed on August 2, 2018, arguably within the limitations period) was in no way due to a mistake concerning CLH's identity, and the SAC does not allege otherwise. It was plainly a deliberate decision by Plaintiffs not to name CLH as a defendant—which was not surprising, because CLH would not be subject to liability under Section 10(b) and suing it has forced Plaintiffs to invoke an obscure provision of the Exchange Act for which no private right of action has been recognized and to attempt to claim personal jurisdiction over a company that does not operate or issue securities in the United States.

As the Supreme Court has explained, "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." *Krupski*, 560 U.S. at 549.[6] As a result, the new Section 20(b) alleged against CLH in the SAC does not relate back to the filing of the Amended Complaint and is time-barred.

---

million to close to 5.5 million tons per year.'"); ¶ 7 ("[T]op executives at Cemex Latam and Cemex Colombia paid bribes worth approximately $20.5 million to a legal representative of CI Calizas in connection with the acquisition of the land, mining rights and benefits of the tax-free area for the plant."); ¶ 8 ("Defendants' financial results, statements regarding internal controls, statements regarding the new cement plant, as well as statements regarding its code of ethics, and its antibribery policies in particular, were therefore materially false and misleading throughout the Class Period because they failed to disclose that: (i) top executives and Cemex Latam and Cemex Colombia had engaged in an unlawful bribery scheme in connection with the Company's business dealings in Colombia . . . ."); ¶¶ 9, 10, 25, 28, 33, 41, 43, 44, 48, 51, 60, 69, 70 (all mentioning CLH).

[6] *See also In re Enter. Mortg. Acceptance Co., LLC, Sec. Litig.*, 391 F.3d 401, 405 n.2 (2d Cir. 2004), *as amended* (Jan. 7, 2005) ("[Plaintiff's] failure to [name these defendants] in the original complaint . . . must be considered a

11

## III.   CLH IS NOT SUBJECT TO PERSONAL JURISDICTION

Plaintiffs have failed to allege facts sufficient to establish personal jurisdiction over CLH in the United States, under either a general jurisdiction or a specific jurisdiction theory.  Plaintiffs' claim against CLH must therefore be dismissed for lack of personal jurisdiction.

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).  Personal jurisdiction may be general (all-purpose) or specific (conduct-linked).  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673–74 (2d Cir. 2013).  In either case, it is a defendant-specific inquiry, *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980), that focuses on the contacts the defendant has to the forum, *Daimle*r *AG v. Bauman*, 571 U.S. 117, 126 (2014); *Walden v. Fiore*, 571 U.S. 277, 282-85 (2014).

To survive a motion to dismiss for lack of personal jurisdiction, a "plaintiff must make a *prima facie* showing that jurisdiction exists."  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 34–35 (2d Cir. 2004).  While a plaintiff's pleadings are construed in the light most favorable to the plaintiff, a court need not "draw argumentative inferences in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (internal quotations omitted), nor accept as true "a legal conclusion couched as a factual allegation," *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).

---

matter of choice, not mistake.") (internal quotation marks omitted) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994)); *Fogel*, 2017 WL 751155, at *11 (no relation back where "Plaintiff knew at the time he brought this case that Rank was the CEO of Wal-Mex [and] that Wal-Mart was Wal-Mex's parent company" but chose not sue them initially); *Fischer*, 2017 WL 128705, at *10–11 (plaintiff's decision to sue individuals rather than corporation, though "strategically curious," was not kind of "'mistake' that Rule 15 contemplates"); *Vitamin C Antitrust*, 995 F. Supp. 2d at 129 ("The plaintiff has sued the right defendant, and simply neglected to sue another defendant who might also be liable.  If the drafters of Rule 15 had meant to allow relation back in this situation, they could have easily done so.").

### A.    CLH Is Not Subject To General Jurisdiction In The United States

This Court may not exercise general jurisdiction over CLH because it is not "at home" in New York.  In *Daimler*, the U.S. Supreme Court held that a defendant is subject to general jurisdiction in a forum "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State."  571 U.S. 117, 122 (2014) (internal quotations omitted).  For a corporation, "the place of incorporation and principal place of business are paradig[m] bases for general jurisdiction."  *Id*. at 137 (internal citation omitted).  The Second Circuit has held that place of incorporation and principal place of business are the only two appropriate considerations for a general jurisdiction analysis "except in a truly 'exceptional' case."  *Brown v. Lockheed Martin Corp*., 814 F.3d 619, 627 (2d Cir. 2016) (internal citation omitted).

As Plaintiffs admit, CLH is "organized and incorporated in Spain, is the holding company for CEMEX's operations in [various Latin American countries]," and CLH's "common shares are listed on the Colombian Stock Exchange . . . ."  SAC ¶ 20.  Moreover, this is not the type of "exceptional case" that would justify the exercise of general jurisdiction absent its incorporation or principal place of business in the U.S., because CLH's contacts with the U.S. are not "so substantial and of such a nature as to render the corporation at home in that State."  *Daimler AG*, 571 U.S. at 139 n.19 (identifying, as an example, the complete relocation of a Philippine corporation's operations to Ohio during World War II in *Perkins v. Benguet Consolidated Mining Co*., 342 U.S. 437 (1952)).  Plaintiffs here have failed to allege that CLH is "at home" in New York for purposes of general jurisdiction.

13

**B.      CLH Is Not Subject To Specific Jurisdiction In The United States**

Plaintiffs' attempt to establish specific jurisdiction over CLH fares no better because the SAC fails to allege adequately that CLH's purported suit-related conduct created a sufficient connection with the United States. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 283–85 (2014). To establish specific jurisdiction, a defendant's "suit-related conduct must create a substantial connection with the forum State" that "must arise out of contacts that the defendant *himself* creates with the forum State," and "not . . . with persons who reside there." *Walden*, 571 U.S. at 283–85. It is axiomatic that "specific jurisdiction cases are limited to those involving issues deriving from, or connected with, the very controversy that establishes jurisdiction." *In re Roman Catholic Diocese Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) (citation and internal quotation marks omitted). Moreover, specific jurisdiction requires a "'substantial nexus' between the [contacts] and the cause of action." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262 (JPO), 2014 WL 4473352, at *4 (S.D.N.Y. Sept. 11, 2014). In fact, courts in the Second Circuit require no less than a "'but for' connection between the defendant's forum-directed activities and the claim." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2015 WL 6243526, at *28 (S.D.N.Y. Oct. 20, 2015), *on reargument*, 2016 WL 1301175 (S.D.N.Y. Mar. 31, 2016).

Here, Plaintiffs cannot demonstrate that CLH's alleged suit-related conduct—alleged to have occurred entirely abroad—created the requisite connection with the U.S. In analyzing a defendant's contacts with the forum state, courts may only look at the "very activity" out of which the "cause of action arises." *Keeton*, 465 U.S. at 780; *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331, 341 (2d. Cir. 2016) (suit-related conduct is limited to the conduct that gives "rise to the episode-in-suit"). Moreover, the forum must be the "focal point" or "nucleus"

14

of plaintiffs' underlying claim. *Waldman*, 835 F.3d at 331. Where the alleged misconduct occurs outside the forum, as is the case here, and a plaintiff attempts to establish jurisdiction based on the effects of that alleged misconduct in the forum, the plaintiff must allege that the defendant "took intentional, and allegedly tortious, actions . . . expressly aimed at the forum," and that their claims arise from those actions. *In re Terrorist Attacks*, 714 F.3d at 674; *see also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018).

Plaintiffs fail to allege that any purported conduct engaged in by CLH occurred in or was intentionally aimed at the United States. As alleged by Plaintiffs, CLH is based and operates entirely outside the United States, primarily in Latin America.[7] The allegations in the SAC all relate to conduct purportedly engaged in by CLH in Colombia in relation to a Colombian subsidiary and the purchase of land in Colombia to build a cement plant. The SAC contains no well-pleaded allegations to the contrary. To the extent that the SAC contains conclusory statements to the contrary, those allegations are based on "legal conclusion[s] couched as a factual allegation," *Jazini*, 148 F.3d at 185; *see also In re Terrorist Attacks*, 714 F.3d at 673, or "argumentative inferences," *Robinson*, 21 F.3d at 507; *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012), and, therefore, cannot establish personal jurisdiction.

The SAC's only attempt to connect CLH to the United States is the allegation that CLH provided certain information to CEMEX that was then included by CEMEX in SEC filings and other public statements made by CEMEX in the United States. *See, e.g.,* SAC ¶ 29. Even assuming the accuracy of that allegation, merely supplying information to a corporate parent, even with the knowledge that such information may be included by the parent in required U.S. filings, is

---

[7] CLH's challenge to personal jurisdiction is a facial one, relying solely upon the allegations made by Plaintiffs in the SAC.

insufficient to establish personal jurisdiction over the foreign subsidiary in the U.S. *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 354 (D. Md. 2004) (no specific jurisdiction over foreign defendant who participated in fraudulent scheme that allowed artificially inflated financial statements to be incorporated into SEC filings because fraud was "directed towards the Netherlands, and globally, but not specifically towards the U.S."). Such contacts are the sort of "random, fortuitous, or attenuated contacts" that cannot establish jurisdiction. *Walden*, 571 U.S. at 286; *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2d Cir. 2016).

Because Plaintiffs have failed to plead either general or specific jurisdiction, the SAC must be dismissed as to CLH for lack of personal jurisdiction.

## IV.   PLAINTIFFS HAVE NOT PLEADED A CLAIM UNDER SECTION 20(b)

Even assuming *arguendo* that Section 20(b) creates a private right of action, that the claim is timely and that CLH is subject to the Court's jurisdiction (not one of which is correct), Plaintiffs have failed to plead the elements of a Section 20(b) claim. Section 20(b) provides that it "shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person." 15 U.S.C. § 78t(b). Thus, the plain statutory language requires an "act or thing which it would be unlawful" for the defendant to do under the Exchange Act or the rules promulgated thereunder.

In addition, Section 20(b) cannot "give rise to liability absent the culpability required of a Section 20(a) claim." *Rex & Roberta Ling Living Trust U/A Dec. 6, 1990 v. B Commc'ns Ltd.*, No. 17-CV-4937 (JPO), 2019 WL 1407453, at *11 (S.D.N.Y. Mar. 28, 2019). To establish liability under Section 20(a) (and thus also under Section 20(b)), a plaintiff must show "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that

16

the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 109 (2d Cir. 2007).  To be a "culpable participant" in another's fraud, plaintiffs must plead that the defendant "knowingly used the controlled person to commit the illegal act." *Cohen v. Citibank, N.A.*, 954 F. Supp. 621, 630 (S.D.N.Y. 1996) (citing *Moss v. Morgan Stanley*, 553 F. Supp. 1347, 1362 (S.D.N.Y. 1983)).  *See also SEC v. Coffey*, 493 F.2d 1304, 1317 (6th Cir. 1974) ("Under section 20(b) there must be shown to have been knowing use of a controlled person by a controlling person before a controlling person comes within its ambit."); *SEC v. Zavodchikov*, No. CV 16-845, 2019 WL 3451501, at *4 (D.N.J. July 31, 2019) ("To establish liability under Section 20(b) of the Exchange Act, Plaintiff must allege facts that show: (1) an underlying primary violation of the Exchange Act by a controlled person or entity; (2) Defendants had control over the primary violator; and (3) Defendants were culpable participants in the fraudulent scheme.") (citing Section 20(a) cases).  Plaintiffs have failed to plead at least three required elements of a Section 20(b) claim:  (A) control, (B) an "unlawful act" under the Exchange Act, and (C) culpability, or scienter.[8]  Each such failure independently requires dismissal.

### A.      Plaintiffs Fail To Plead Control Of CEMEX By CLH

"Control over a primary violator may be established by showing that the defendant possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472–73 (2d Cir. 1996) (internal citations omitted).  Furthermore, plaintiffs must allege that a defendant "exercised actual control over the matters at issue." *In re*

---

[8]  In addition, the SAC fails to plead a primary violation of the Exchange Act by the allegedly controlled entity, CEMEX (*i.e.*, a Section 10(b) claim), for the reasons set forth in CEMEX's Motion to Dismiss.

*Banco Bradesco, S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 669 (S.D.N.Y. 2018) (internal citations omitted) (emphasis in original). "The mere exercise of influence . . . is not sufficient to establish control," *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 524 (S.D.N.Y. 2016), nor is "officer or director status alone" sufficient, because control person liability requires "a real, de facto power." *Banco Bradesco*, 277 F. Supp. 3d at 670.

Even if an underlying Section 10(b) claim were properly pleaded, and it is not (*see* CEMEX's Motion to Dismiss), the SAC does not adequately allege that CLH exercised any control over CEMEX's alleged misstatements or omissions. Simply reciting the words "control person" is not enough. *See* SAC ¶ 88 ("CLH was a control person over CEMEX for purposes of issuing statements pertaining to CLH in filings with the SEC."). CLH is an indirect subsidiary of CEMEX, the issuer that made the allegedly misleading statements. *See* SAC ¶ 54. Plaintiffs cannot and do not argue or allege any facts suggesting that CLH or its officers have "actual control" or "real, de facto power" over CEMEX. In fact, Plaintiffs allege the exact opposite: that CEMEX controls CLH. *See* SAC ¶¶ 27–28 (alleging that CEMEX owns a "controlling percentage" of CLH—not the other way around—and that "CLH must give CEMEX access to its books" and is obligated to provide certain financial and other information to CEMEX). Nor in any event could CLH, which accounts for, at most, 13 percent of CEMEX's net sales, according to Plaintiffs, effectively control CEMEX itself, a global, multinational corporation that "operates throughout the Americas, Europe, Africa, the Middle East, and Asia." *Id.* ¶¶ 2–3. As the Court observed, CLH "comprises less than 6 percent of the total assets, and less than 13 percent of the total net sales, of Cemex, a company with operations in more than 50 countries across several continents," and CLH "comprises an even smaller share of Cemex's overall business than these numbers [which also

include subsidiaries other than CLH] suggest."  Order at 18–19 & n.10 (noting "the tiny share of

Cemex's business that Cemex Latam comprises").[9]

The allegation that CLH is obligated by the Framework Agreement to provide CEMEX

with access to its books and records as well as certain financial and other information (SAC ¶ 28)

does not somehow transform CLH into a "control person over CEMEX for purposes of issuing

statements pertaining to CLH in filings with the SEC."  SAC ¶ 88.  Nothing in the SAC suggests

that CLH had any control whatsoever over what CEMEX included in its SEC filings or other public

statements.  The Court need not accept as true conclusory allegations or legal conclusions pleaded

as fact.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Iqbal*, 556 U.S. at

663 (citing *Twombly*, 550 U.S. at 555); *Jazini*, 148 F.3d at 185 (court need not accept as true "a

legal conclusion couched as a factual allegation"); *Barrett v. PJT Partners Inc.*, No. 16-CV-2841

(VEC), 2017 WL 3995606, at *3 (S.D.N.Y. Sept. 8, 2017) (same).

### B.      Plaintiffs Fail To Plead An "Unlawful Act" By CLH

Section 20(b) provides that it "shall be unlawful for any person, directly or indirectly, to

do any act or thing which *it would be unlawful for such person to do under the provisions of this*

*chapter or any rule or regulation thereunder* through or by means of any other person."  15 U.S.C.

§ 78t(b) (emphasis added).    Paralleling the statutory language, Plaintiffs allege that "Cemex

Latam, directly or indirectly, *engaged in conduct that was unlawful for Cemex Latam to do under*

*Section 10(b) of the Exchange Act and the rules and regulations promulgated thereunder* through

---

[9]   "[A] subsidiary corporation by definition does not control the parent corporation."  *Rothschild Int'l Corp. v. Liggett Grp., Inc.*, 6 Del. J. Corp. L. 421, 428 (Del. Ch. 1981).  *See also Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771–72 (1984) (noting that a "parent may assert full control at any moment if the subsidiary fails to act in the parent's best interests"); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005) (holding that a subsidiary would not be required to produce documents held by its parent corporation because a "subsidiary, by definition, does not control its parent corporation."); *LT Int'l Ltd. v. Shuffle Master, Inc.*, No. 2:12-CV-1216-JAD-GWF, 2014 WL 3734270, at *2 (D. Nev. July 29, 2014) (same).

another person, Cemex." SAC ¶ 88 (emphasis added). This conclusory allegation, though, is not supported by any factual allegations. Nor could Plaintiffs allege that CLH engaged in conduct that was unlawful for it to do under Section 10(b) or Rule 10b-5. CLH is a foreign entity whose securities trade on the Colombian Stock Exchange (as Plaintiffs allege). SAC ¶ 20. As a result, CLH cannot violate Section 10(b) because its securities do not trade on a United States exchange and thus any such claim alleged against it would be an impermissible extraterritorial application of the Exchange Act in violation of *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 273 (2010) (plaintiff alleging a claim under Section 10(b) must plead that it purchased or sold a security listed on a U.S. national exchange or otherwise in a "domestic" transaction).

Plaintiffs have failed to plead, as required by Section 20(b), that CLH did "any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder." They thus have failed to state a Section 20(b) claim.

### C.    Plaintiffs Fail To Plead Scienter

To plead fraudulent intent (or "scienter"), a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" as to each alleged false statement. 15 U.S.C. § 78u-4(b)(1)–(2). Plaintiffs must therefore allege facts showing either (1) strong circumstantial evidence of conscious misbehavior or recklessness, or (2) the defendant's motive and opportunity to commit fraud. *Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004). A complaint will survive a motion to dismiss only "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

The standard for recklessness in this context is very high.  "For purposes of the PSLRA, 'recklessness' is conduct that is 'highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'"  *Barrett*, 2017 WL 3995606, at *7 (citing *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).  Even though "circumstantial evidence of conscious misbehavior or recklessness may support a strong inference of scienter, 'the strength of the circumstantial allegations must be correspondingly greater if there is no motive.'"  *Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 216 (2d Cir. 2010) (citation omitted).

Here, Plaintiffs do not even try to plead that CLH or its senior management had any motive to commit securities fraud.  Plaintiffs' allegations of conscious misbehavior or recklessness would therefore have to be particularly strong here.

In order to plead that CLH had the requisite knowledge, "the pleaded facts must create a strong inference that someone *whose intent could be imputed to the corporation* acted with the requisite scienter."  *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (emphasis added).  The SAC pleads generally that two senior executives of CLH paid bribes that CEMEX is alleged to have misleadingly omitted from its SEC filings and other public statements.  *See* SAC ¶ 54.  Although the Court previously held that Plaintiffs adequately pleaded scienter as to these two individuals (Order at 16), nowhere in the SAC do Plaintiffs even attempt to allege *CLH's* scienter, either based on the knowledge of these two executives or otherwise.[10]   The single reference to "scienter" in the SAC only alleges

---

[10] The Court also observed that "in light of the Terminated Officers' senior positions at Cemex Latam, their mental states can, arguably, be imputed to that entity."  Order at 16.  Because (as the Court also noted) CLH was not a defendant at the time, however, the Court's observation about the possibility that the employees' scienter could be imputed to CLH was expressly non-decisional and, regardless, the SAC simply fails to allege scienter on the part of CLH.  *See id.* at 17 (noting that it did not decide "whether the Terminated Officers' scienter is attributable to Cemex

(conclusorily) the sciente of CEMEX and the Individual Defendants.  *Id*. ¶ 76.  In fact, the SAC does not even name the CLH officers or provide any information about them, their positions at CLH or their alleged role in either the purported bribery payments or in CLH's or CEMEX's public disclosures related to the Maceo plant.[11]  This is insufficient to plead CLH's sciente under the heightened pleading requirements of the PSLRA.

Corporate sciente "is generally satisfied where the employee with knowledge of the facts that make a corporate statement misleading occupies a *position likely to enjoy some oversight over the company's public-facing representations*."  *Rex & Roberta Ling Living Trust U/A Dec. 6, 1990 v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 409–10 (S.D.N.Y. 2018) (emphasis added).  But here, Plaintiffs do not allege that the two unnamed executives of CLH involved in the alleged bribery payments had "oversight over the company's public-facing representations" or were in any way involved in or even aware of CEMEX's (or even CLH's) financial reporting or disclosures.  As this Court explained in *B Communications*, "corporate sciente might not attach where a company issues materially misleading statements solely because a low-level employee *with no relationship to the investing public* fails to disclose to his higher-ups a fraud he has committed against his own employer."  *Id*. at 409 (emphasis added) (citing *Barrett*, 2017 WL 3995606, at *8).

Here, all that is known about the two CLH executives is their job titles (Vice President of Planning and General Counsel) (SAC ¶ 54), which provide no reason to believe that they had any oversight over CEMEX's (or even CLH's) communications about the Maceo plant and the legal

---

Latam").

[11] The most that the SAC does is quote a press release by CEMEX stating in part that the "officers responsible for the implementation and execution of the above referenced payments" were "two members of senior management of CLH and CEMEX Colombia (the Vice President of Planning of CLH and CEMEX Colombia and the General Counsel of CLH Holdings and CEMEX Colombia) . . . ."  SAC ¶ 54.

proceedings related to it or any relationship to the investing public.[12]  Moreover, because the allegedly misleading disclosures were made by CLH's ultimate parent, CEMEX, the relevant inquiry is whether the executives at CLH with purported knowledge of the alleged bribery had any role in or awareness of either (i) what was communicated by CLH to CEMEX, its ultimate parent, or (ii) what CEMEX disclosed to the public or in SEC filings about the Maceo plant.  Again, the SAC contains absolutely no allegations whatsoever on those subjects.

More is required to plead a strong inference of corporate scienter in this Circuit.  The scienter of corporate executives has been imputed to the corporation where, for example, those executives not only allegedly "orchestrated a bribery scheme" but "also [we]re alleged to have understood how th[o]se bribes could impact, or be reflected in, [their company's] financial statements and therefore took steps to obscure those bribes in [the company's] books and records as legitimate business transactions."  *In re VEON Ltd. Sec. Litig.*, No. 15-CV-08672 (ALC), 2017 WL 4162342, at *10 (S.D.N.Y. Sept. 19, 2017).  The SAC alleges nothing like that.  Nor is this a case  "where a company's highest-level directors allow the company's outward-facing communications to omit their own known, material misconduct," and can therefore "fairly be said to act on behalf of the company . . . ."  *B Commc'ns*, 346 F. Supp. 3d at 409 (citing *Acticon AG v. China N. E. Petrol. Holdings Ltd.*, 615 F. App'x 44, 45 (2d Cir. 2015) (summary order) (imputing to a company the scienter of a CEO who "attest[ed] to the company's internal controls, while allegedly simultaneously looting [the company's] treasury and engaging in unauthorized transfers of company funds").  Again, Plaintiffs here do not allege that the CLH executives had any role in

---

[12] Notably, while Plaintiffs allege that it was primarily CEMEX's disclosures about legal proceedings related to the acquisition of the land for the Maceo plant that were misleading, they do not allege that CLH was a party to that legal proceeding.  While an introductory paragraph of the SAC conclusorily alleges that "Cemex and Cemex Latam both became involved in a legal proceeding in Colombia," the alleged disclosures cited later in the SAC on this issue state only that CEMEX Colombia was involved, not CLH.  *See* SAC ¶¶ 40, 43, 45, 47, 49.

"outward-facing communications" by either CLH or CEMEX (or even intracompany communications to CEMEX) or that they omitted their alleged conduct from any such communications.[13]  In short, Plaintiffs have failed to plead scienter.

## CONCLUSION

For all of the foregoing reasons, the SAC should be dismissed as against CLH with prejudice.

Dated:  New York, New York
         September 5, 2019

Respectfully submitted,

/s/ Adam S. Hakki
Adam S. Hakki
Jerome S. Fortinsky
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY 10022-6069
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179
Email:    ahakki@shearman.com
        jfortinsky@shearman.com

*Attorneys for Defendant CEMEX LatAm Holdings, S.A.*

---

[13] As another recent decision by this Court has instructed, "the Court should consider the individual's relative seniority at the issuing entity *and the connection between the executive's role and the fraudulent statements*." *Barrett*, 2017 WL 3995606, at *7 (emphasis added).  The latter is simply not pleaded here, much less with the specificity required by the PSLRA.  In *Barrett*, the Court found that the employee's "role in the company weigh[ed] against imputing his knowledge" to the company, and noted that the "determinative question" was whether the individual "was involved in formulating [the company's] internal controls or its disclosure of those policies to the market, not whether he was involved in defrauding [the company] and its clients . . . ." *Id*. at *8.  Here, as in *Barrett*, "[t]he Complaint does not allege that [the CLH executives] had any role in crafting the internal controls and compliance policies at issue in this case or in [CEMEX's] public reporting." *Id.*  As in *Barrett*, the Complaint does not allege that the officers of CLH who allegedly engaged in the bribery communicated with CEMEX or the public on behalf of CLH, contributed in any manner to CLH or CEMEX's policies regarding internal controls and compliance, or were involved in preparing CEMEX's (or even CLH's) public disclosures.