UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
CHRISTOPHER SCHIRO, *individually and on behalf of all others similarly situated*,

         Plaintiff,

-against-

CEMEX, S.A.B. de C.V., CEMEX LATAM HOLDINGS, S.A., FERNANDO A. GONZALEZ OLIVIERI, and JOSÉ ANTONIO GONZALEZ FLORES,

         Defendants.
------------------------------------------------------------------- X

18-CV-2352 (VEC)

<u>OPINION AND ORDER</u>

VALERIE CAPRONI, United States District Judge:

  Lead Plaintiffs Carlos Llantada, Richard Storm, Jr., and Stationary Engineers Local 39 Pension Fund have sued Cemex, S.A.B. de C.V. ("Cemex" or the "Company"), two of Cemex's officers, and Cemex Latam Holdings, S.A. ("CLH") for violations of Sections 10(b), 20(a), and 20(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a) and Rule 10b-5 promulgated thereunder. *See* Second Am. Compl. ("SAC"), Dkt. 60. Defendant Cemex and the two individual Cemex officers (collectively, the "Cemex Defendants") move to dismiss the SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 63. Defendant CLH moves to dismiss the SAC for failure to state a claim and lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2). Dkt. 69. For the following reasons, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

  Because the underlying facts of this case have not changed since the Court's ruling on Defendants' motion to dismiss the First Amended Complaint ("FAC"), the Court refers the

reader to that Opinion for a full discussion of the facts. *See Schiro v. Cemex, S.A.B. de C.V.,* 396 F. Supp. 3d 283, 292-94 (S.D.N.Y. 2019) ("*Cemex I*").

On July 12, 2019, the Court granted Defendant Cemex's motion to dismiss with leave to amend. Plaintiffs filed a SAC on August 1, 2019. Dkt. 60. The SAC added CLH as a defendant for the first time.[1] On September 5, 2019 both Cemex and CLH moved to dismiss the SAC. Dkts. 63, 69.

## DISCUSSION

### I. Legal Framework

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [the Court] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The complaint need not "contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters.*, 751 F.3d 64, 70 (2d Cir. 2014).

### II. The Cemex Defendants' Motion to Dismiss is Granted

Section 10(b) of the Securities Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe."

---

[1] CLH is an indirect and partial subsidiary of Cemex; as of December 31, 2016, Cemex owned approximately 74% of CLH. SAC ¶¶ 26-27. CLH, in turn, is the holding company for Cemex's operations in various Latin American countries and owns approximately 99.7% of its subsidiary, Cemex Colombia. SAC ¶¶ 20, 26.

2

15 U.S.C. § 78j(b). The SEC's implementing rule, Rule 10b–5, makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5. To state a claim under these provisions, a plaintiff must plausibly plead six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 151 (2d Cir. 2010) (quoting *Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).

Because claims under Section 10(b) and Rule 10b–5 sound in fraud, a heightened pleading standard applies. Pursuant to Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)); *see also* 15 U.S.C. § 78u–4(b)(1)(B).

When a complaint "claims that statements were rendered false or misleading through the non-disclosure of illegal activity, the facts of the underlying illegal acts must also be pleaded with particularity, in accordance with the heightened pleading requirement of Rule 9(b) and the PSLRA." *Gamm v. Sanderson Farms Inc.,* 944 F.3d 455, 465 (2d Cir. 2019). If the complaint "fails to allege facts which would establish such an illegal scheme, then the securities law claims premised on the *nondisclosure* of the alleged scheme are fatally flawed." *In re Axis Capital Holdings Ltd., Sec. Litig.,* 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006). In order adequately to

allege an underlying illegal act, such as bribery, Plaintiffs must plead the "who, what, when, where, and how" of the alleged improper transaction. *See Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC,* 164 F. Supp. 3d 568, 578-79, 582 (S.D.N.Y. 2016) (dismissing claim premised on foreign bribery where complaint failed to plead "how, when, and whether" defendant offered anything of value to government officials).

Here, Plaintiffs argue that Cemex's failure to disclose the alleged bribery scheme when disclosing information about the Colombian litigation relating to the Maceo plant was an actionable omission. Pl. Mem. of Law, Dkt. 76 at 13-16. Because Cemex's statements were materially misleading only if bribes were actually paid, Plaintiffs must plead sufficient facts describing the essential elements of the alleged bribery. *See Gamm,* 944 F.3d at 464. The SAC, however, relies primarily on mischaracterizations of Cemex's own disclosures to plead the existence of an underlying bribery scheme; Plaintiffs claim that Cemex's "admissions" establish that bribes were paid. *See* Pl. Mem. of Law, Dkt. 76 at 16; SAC ¶¶ 54-59. Specifically, the SAC alleges that in September 2016 the Company "announc[ed] that an internal probe had uncovered that two senior executives had improperly paid $20 million in *bribes*," and that the "Company explained that the *bribery* payments had been deposited in the bank accounts of the legal representative" of CI Calizas. *See* SAC ¶¶ 54, 56 (emphasis added). Contrary to the allegations in the SAC, Cemex's announcement, in fact, stated only that an "internal audit process" had revealed that Cemex Colombia had made approximately $20 million in payments to CI Calizas's legal representative in connection with the acquisition of the Maceo Plant's land, mining rights, and tax benefits, and that these payments were made "in violation of Cemex and Cemex Latam's internal policies and, potentially, of applicable Colombian laws." SAC ¶ 54; Moritz Decl., Dkt. 65, Ex. 4. As this Court made clear in its prior Opinion, Plaintiffs' allegations that Cemex

4

announced that it had uncovered bribe payments or admitted to paying bribes are not accurate. Cemex stated only that it had uncovered irregular payments; it did not characterize the payments as bribes. *See Cemex I,* 396 F. Supp. 3d at 295 n.3.

Having no concrete admissions of illegal activity on which to rely, the SAC repeatedly asserts that "top executives at Cemex Latam and Cemex Colombia paid bribes worth approximately $20.5 million to a legal representative of CI Calizas," SAC ¶¶ 5, 7, 41, but includes no factual allegations of exactly who made the payments, to whom the payments were made, when the payments were made, or how the payments were made.[2] Accordingly, these conclusory allegations are insufficient to satisfy the heightened pleading requirement under Rule 9(b). *See Gamm*, 944 F.3d at 465 (holding that appellants failed to plead the existence of an antitrust conspiracy with particularity because they "merely use stock phrases" to plead the existence of illegal activity but failed to allege *when* [defendant] decided on its course of supply reduction, *which* industry peers were a part of that decision, *how* specific supply reductions were performed …, [and] *what* information [defendant] knew"); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 632 (S.D.N.Y. 2017) ("Blanket allegations that payments were made [] standing alone, do not satisfy Rule 9(b)'s requirement to plead the who, what, when, where, and how of the alleged transactions.") (internal quotation marks omitted). Because Plaintiffs have

---

[2] Although Plaintiffs' FAC included purported disclosures from three unnamed confidential witnesses who allegedly knew that bribes had been paid, FAC, Dkt. 39 ¶¶ 33-39, those allegations were removed from the SAC. Plaintiffs argue that, "given the company's ***admissions***, neither the FAC nor the SAC need confidential witness allegations to establish the underlying conduct." Pl. Mem. of Law, Dkt. 76 at 16 (emphasis in original). First, as explained above, these alleged "admissions" fail to establish any underlying misconduct as they are not, in fact, admissions of bribery. Nevertheless, the Court notes that, even if the SAC had included the confidential witness allegations in an attempt to plead the existence of a bribery scheme, the Court has already ruled that those allegations are "too vague, speculative, and conclusory" to satisfy the heightened pleading standard. *Cemex I,* 396 F. Supp. 3d at 305. ("Plaintiffs do not allege that CW-1 witnessed money changing hands, that anyone told him that bribes were being paid, or any other facts from which the Court could infer either that bribes were paid or that CW-1 would have known about them. As to another of CW-1's allegations, that Cemex Colombia paid bribes to avoid closure of a plant for which it did not have a construction license, Plaintiffs fail entirely to allege the basis for CW-1's purported knowledge.").

5

failed to plead with particularity the existence of an underlying bribery scheme, they cannot plead that Cemex committed fraud by failing to disclose the payment of bribes.[3] *See Gamm*, 944 F.3d at 465 (dismissing appellant's complaint because "although [they] do allege that [defendant] engaged in "anticompetitive" conduct, there is virtually no explanation as to how that collusive conduct occurred, and whether and how it affected trade."). Accordingly, Plaintiffs have failed to plead an actionable omission on which they could base a securities fraud action.[4]

## II. Cemex Latam Holdings' Motion to Dismiss is Granted

As noted, *supra,* Plaintiffs' SAC names CLH as a defendant for the first time, alleging that CLH violated § 20(b) of the Exchange Act by using "its relationship with Cemex to cause the Company to issue materially false and misleading information in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder." SAC ¶ 88.

Defendant CLH moves to dismiss Plaintiffs' complaint on the grounds that the § 20(b) claim is time-barred, there is no private right of action under § 20(b), there is no personal jurisdiction over CLH, and plaintiffs have not adequately pleaded a claim under § 20(b). *See* Dkt. 70. Because the claim against CLH is time-barred, the Court need not reach Defendants' remaining arguments.

---

[3] Plaintiffs' remaining attempts to plead the existence of a bribery scheme also fail to meet the heightened pleading standard. First, the SAC references a post-class-period online Spanish article, by an unnamed author, that allegedly "revealed that directors of the subsidiary in fact informed the parent company in Mexico regarding the $20.6 million payment while negotiations were ongoing for the acquisition of the land for the Maceo plant." SAC ¶ 62. Plaintiffs fail to explain the basis for the article's conclusory allegation and, in any event, do not allege that the article asserted that *bribery* occurred. Second, Plaintiffs' brazen allegation that a bribery scheme must have existed because corruption and bribery are "so pervasive" in Colombia, SAC ¶ 33, is conclusory, speculative, and irrelevant for purposes of meeting the heightened pleading requirement.

[4] Because Plaintiffs have failed to plead a material misrepresentation or omission by the Defendants, the Court need not address Defendants' arguments that the SAC also fails to plead scienter, materiality, loss transaction, and a domestic transaction. The Court notes, however, that Plaintiffs' SAC does not cure the defects previously identified in this Court's opinion dismissing the FAC. *See Cemex I,* 396 F. Supp. 3d at 300-08.

### A. Applicable Law

A complaint in a private securities fraud action is timely if it is filed within "2 years after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b)(1). Because § 20(b) of the Exchange Act creates derivative liability for violations of other sections of the Exchange Act, the statute of limitations periods for those sections applies to claims brought under § 20(b). As such, Plaintiffs' claim against CLH is subject to a two-year statute of limitations.

The statute of limitations period for a securities claim begins running when the plaintiff "discovers or a reasonably diligent plaintiff would have discovered the facts constituting the violation, including scienter—irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (internal quotation marks omitted); *see also Dodds v. Cigna Securities Inc.*, 12 F.3d 346, 350 (2d Cir. 1993) (explaining that the statutory limitations period for claims under §10(b) begins to run "when the claim accrued or upon discovery of the facts constituting the alleged fraud. … A plaintiff in a federal securities case will be deemed to have discovered fraud for purposes of triggering the statute of limitations when a reasonable investor of ordinary intelligence would have discovered the existence of the fraud."); *Fogel v. Wal-Mart de Mexico SAB de CV*, No. 13-CV-2282, 2017 WL 751155, at *8 (S.D.N.Y. Feb. 27, 2017), *aff'd sub nom. Fogel v. Vega*, 759 F. App'x 18 (2d Cir. 2018) (explaining that accrual of a securities fraud claim requires "(i) the actual purchase or sale of a security and (ii) either the actual discovery of scienter, or the possibility of scienter discovery by a hypothetical, reasonably diligent plaintiff.").

### B. Plaintiffs' Claim Against CLH Is Time-Barred

Because Plaintiffs asserted their § 20(b) claim against CLH more than two years after Plaintiffs discovered the facts constituting the violation, it is time-barred.

Plaintiffs argue that the statute of limitations for the § 20(b) claim against CLH did not begin running until March 14, 2018, when Cemex announced that the DOJ had issued a grand jury subpoena and had begun an investigation into Cemex's operations in Colombia and other jurisdictions. Pl. Mem. of Law, Dkt. 76 at 34-35. The Court disagrees. Defendants' earlier disclosures provided sufficient information to enable Plaintiffs to plead its claim and trigger the statute of limitations. *See City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.,* 637 F.3d 169, 175 (2d Cir. 2011).

In September 2016, Cemex issued a press release and made an SEC filing announcing that an internal probe had revealed that two senior executives had paid $20 million to a representative of CI Calizas. SAC ¶ 54. Plaintiffs' SAC and opposition brief themselves characterize this release as the "first inkling of fraud" and interpreted the disclosure as being the first time "the Company admitted that senior executives at its Colombian subsidiaries had paid bribes in connection with the acquisition of land for its Maceo plant." Pl. Mem. of Law, Dkt. 76 at 27 (citing SAC ¶ 54). Plaintiffs also allege that this September 2016 disclosure caused Cemex's ADS price to fall 2.28%. SAC ¶ 55. Although Plaintiffs now claim that the September 2016 press release did not trigger the statute of limitations because, among other things, it "did not indicate that the payments may have violated any applicable laws," this argument contradicts the allegations in the SAC and Plaintiffs' earlier contention that the September 2016 disclosure constituted "admissions" of bribery by Defendants. *See* Pl. Mem. of Law, Dkt. 76 at 15 (citing ¶¶ 54-60), 34. Plaintiffs' opposition explicitly argues that the "admissions" made in this 2016 release were sufficient, on their own, to "establish the underlying misconduct." *Id.* at 16. Although the Court disagrees that the 2016 Release admitted that bribes were paid, as described in Plaintiffs' SAC, the September 2016 disclosure marks the date by which Plaintiffs believed

8

"the truth [began] to emerge." *See Dodds*, 12 F. 3d at 350 ("when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry… [into such]…. storm warnings.") (internal quotation marks omitted); *Merck*, 559 U.S. at 653 ("In determining the time at which "discovery" of those "facts" [constituting the violation] occurred, terms such as "inquiry notice" and "storm warnings" may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating.").

On April 28, 2017, Cemex filed its annual Form 20-F, in which it disclosed that it had "identified a material weakness in our internal control over financial reporting." SAC ¶ 58. Specifically, the disclosure stated that the company's internal controls were ineffective and that its "risk assessment process did not operate effectively to implement controls that would prevent, or detect and correct, misstatements resulting from apparent collusion or management override of controls in relation to significant unusual transactions." *Id*. The Form 20-F asserted that this "material weakness" related "to the previously disclosed irregular payments to a nongovernmental individual made in connection with [the Maceo Plant]." *Id*. Although Cemex's prior disclosures, including the September 2016 release, had stated that it did not expect the discovery of the irregular payments to have a "material adverse impact" on its operations, the Form 20-F clearly indicated that "as of December 31, 2016, the investigations of this failure, and the implementation of our remediation plan to address it, were not far enough advanced to provide a sufficient level of assurance that such circumvention or override of controls and misuse of funds by management would be prevented." *Id.* Accordingly, at least by April 28, 2017, Plaintiffs had sufficient information regarding Defendants' alleged misconduct to file a

complaint against CLH and trigger the statute of limitations.[5] *See Merck*, 559 U.S. at 653; *Dodds*, 12 F.3d at 350. Because the SAC was not filed until August 1, 2019, more than two years later, the claim against CLH is time-barred unless it relates back to the date of the original Complaint.

For purposes of satisfying the statute of limitations, an amended pleading may "relate back to the date of the original pleading," when "the party to be brought in by amendment … knew or should have known that the action would have been brought against it but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(ii). "When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 552 (2010); *Fischer v. Forrest*, No. 14-CV-1304, 2017 WL 128705, at *11 (S.D.N.Y. Jan. 13, 2017) (Rule 15(c)(1)(C) did not allow relation back where plaintiff's "decision not to sue [defendant] until the Third Amended Complaint reflected his strategy . . . and not a mistake as to the correct

---

[5] Plaintiffs' opposition also suggests that the statute of limitations was not triggered until March 14, 2018 because it was not until that date that Plaintiffs could plead loss causation. Pl. Mem. of Law, Dkt. 76 at 35. This argument fails. As noted *supra*, the statute of limitations on a securities fraud claim begins to run when the claim accrues; accrual requires "(i) the actual purchase or sale of a security and (ii) either the actual discovery of scienter, or the possibility of scienter discovery by a hypothetical, reasonably diligent plaintiff." *Fogel*, 2017 WL 751155 at *8. Here, named Plaintiffs Stationary Engineers Local 39 Pension Trust Fund and Llantada first purchased shares in May 2015 and July 2015 respectively; thus, there had been a purchase well prior to April 2017. The SAC relies on Cemex statements made in September 2016, October 2016, December 2016, and April 2017 in its attempt to raise an inference of scienter. SAC ¶¶ 54-58, Pl. Mem. of Law, Dkt. 76 at 4. Thus, both requirements for accrual had occurred by April 2017. Moreover, the Supreme Court has expressly declined to rule on whether the ability to show loss causation is necessary to trigger the statute of limitations. *Merck*, 559 U.S. at 649 ("We consequently hold that facts showing scienter are among those that "constitut[e] the violation. In so holding, we say nothing about other facts necessary to support a private § 10(b) action. *Cf.* Brief for United States as *Amicus Curiae* 12, n. 1 (suggesting that facts concerning a plaintiff's reliance, loss, and loss causation are not among those that constitute "the violation" and therefore need not be "discover[ed]" for a claim to accrue.")).

defendant."), *report and recommendation adopted*, 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017).

Here, the Court has no reason to believe that Plaintiffs made a mistake in failing to name CLH as a defendant in the initial complaint or in the FAC. Plaintiffs were aware of CLH's existence and the relationship among Cemex, CLH, and Cemex Colombia; the FAC explained that "through [CLH], Cemex owns approximately 99.7% of Cemex Colombia S.A." FAC, Dkt. 39 ¶ 3. Because Plaintiffs' decision not to name CLH as a defendant in the initial complaint or FAC was not a mistake about Cemex or CLH's identities, but rather a deliberate decision, relation-back does not apply. *See Hahn v. Office & Prof'l Emps. Int'l Union, AFLCIO*, 107 F. Supp. 3d 379, 385 (S.D.N.Y. 2015) (relation back did not apply because "[r]ather than suing the *wrong* party, . . . '[t]he plaintiff has sued [what he believes is] the right defendant, and simply neglected to sue another defendant who might also be liable.'" (emphasis in original) (quoting *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014))).

## CONCLUSION

For all the foregoing reasons, Defendants' motions to dismiss are GRANTED. The Court warned the Plaintiffs in its prior opinion that if it granted a motion to dismiss the Second Amended Complaint, it would not grant further leave to amend unless Plaintiffs "provided a detailed indication of what facts they would add to cure the pleading's defects (and, ideally a redline proposed Third Amended Complaint) with an explanation of why the amendment would not be futile." *Cemex I,* 396 F. Supp. 3d at 309. Plaintiffs have not done so. Accordingly, this case is DISMISSED with prejudice.

The Clerk of Court is respectfully directed to close the open motions at Dkts. 63 and 69 and close the case.

**SO ORDERED.**

Date: **February 10, 2020**
 **New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**